UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:24-CV-00066-LLK

SHANNON M.                                                            PLAINTIFF

v.

LELAND DUDEK,
Acting Commissioner of Social Security                               DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the
Final Decision of the Commissioner denying his claims for Disability Insurance (DIB) and
Supplemental Security Income (SSI) Benefits under Titles II and XVI of the Social Security Act.
[DN 1]. Plaintiff's Fact and Law Summary is at DN 11, the Commissioner's responsive Fact and
Law Summary is at DN 13. No Reply was filed. The parties have consented to the jurisdiction of
the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal
to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 8]. The matter
is now ripe for determination.

After examining the administrative record, the arguments of the parties, and the applicable
authorities, the Court is of the opinion that the matter should be remanded to the Commissioner
for further consideration. Specifically, the case is remanded to the Commissioner for a new
decision evaluating the medical and opinion evidence for a closed period of disability from the

alleged onset date of March 4, 2021, through November 28, 2022,[1] or any closing date the ALJ deems appropriate. In addition, the Court requests that the administrative record in this case be reviewed to ensure that all of Plaintiff's medical records are accounted for in the exhibits (as will be more thoroughly discussed below).

**Administrative History**. Plaintiff filed a Title II DIB application for a period of disability and disability insurance benefits on October 18, 2021, and a Title XVI application for a period of supplemental security income on October 26, 2021. Both of his applications allege disability beginning March 4, 2021, as a result of a broken right wrist, right wrist pain, torn left rotator cuff status post-surgery, left shoulder pain, neck pain, hypoglycemic, allergies, depression, anxiety, and shortness of breath status post broken ribs. [DN 7] at 78. He was 44 years old at the time of filing. His claims were denied initially on January 19, 2022 [DN 7] at 78-84, and upon reconsideration on May 24, 2022. [DN 7] at 94-101. Plaintiff requested a hearing before an ALJ [DN 7] at 159-160, which was granted. Due to COVID-19, ALJ Lyle Eastham conducted the February 14, 2023, hearing via telephone; Plaintiff was represented at the hearing by attorney Charles Burchett. [DN 7] at 50. Jane Hall, an impartial vocational expert, also provided testimony at the hearing. The ALJ evaluated the evidence of record using the requisite five-step sequential evaluation process. On March 10, 2023, the ALJ issued his written Decision [DN 7] at 15-26 and found that Plaintiff was not disabled at any time from March 4, 2021, through the date of the March 10, 2023, Decision. [DN 7] at 25-26.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council. On May 22, 2023, and June 7, 2023, the Appeals Council granted him extensions of time in which to file

---

[1] On November 28, 2022, Plaintiff was seen by his orthopedic surgeon Chaitanya Malempati with full range of motion and good strength in his right shoulder at the four-month post-surgery visit following his second right shoulder surgery. [DN 7] at 986-989.

additional evidence. [DN 7] at 40, 33. On February 20, 2024, the Appeals Council denied Plaintiff's request for review [DN 7] at 6, making the ALJ's Decision the final Decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's Decision [DN 7] at 15-26 denying Plaintiff's claim for DIB and SSI benefits was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that claimant has not engaged in substantial gainful activity since March 4, 2021, the alleged onset date (20 C.F.R. 1571 *et seq*., and 416.971 *et seq*.). [DN 7] at 17.

Second, the ALJ found that Plaintiff has the following severe impairments: right shoulder degenerative joint disease status post rotator cuff tear repair; degenerative joint disease of the left wrist status post well-healed fracture; and obesity (20 C.F.R. 404.1520(c) and 416.920(c)). *Id.*

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 04, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [DN 7] at 19.

As in any case that proceeds beyond Step 3, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety. 20 C.F.R. §§404.1545(a)(3), 416.945(a)(3). The ALJ found that, notwithstanding his impairments, Plaintiff can perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, and never crawl. The claimant can frequently reach, handle, finger, and feel with the bilateral upper extremities with the exception of never reaching overhead with the bilateral upper extremities. The claimant must avoid frequent exposure to extreme cold and vibrations; and never work at unprotected heights, with dangerous machinery, or operating a motor vehicle as a work requirement. The claimant cannot perform fast paced production rate work such as the rate associated with hourly quotas or conveyor belt paced work.

[DN 7 at 19].

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). [DN 7] at 24.

Fifth, the ALJ found that Plaintiff was born on July 30, 1977, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963); that claimant has at least a high school education (20 CFR 404.1564 and 416.964); that transferability of job skills is not material to the determination of disability; that considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a); and [t]he claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). [DN 7] at 24-25.

**Standard of Review**. The Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum.*

*Servs*., 25 F.3d 284, 296 (6th Cir. 1994). The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed his DIB and SSI claims in October of 2021, the new rules for weighing medical opinions apply. See 20 C.F.R. §§ 404.1520c, 416.920c. Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, in determining the persuasiveness of a medical opinion, an ALJ is to consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). However, the ALJ need only explain how s/he considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Without the treating physician rule, the applicable regulations allow the ALJ to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec*., No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Nature of Plaintiff's medical issues**. On March 4, 2021, Plaintiff fell at work, simultaneously injuring his left wrist and right shoulder. [DN 7] at 718. He was initially treated for a broken left wrist which was set in a cast but received no surgical intervention. [DN 7] at 785. Six weeks later, the left wrist cast was removed but Plaintiff still suffered from pain, swelling, weak grip and a stiff elbow. [DN 7] at 789. His wrist was fitted with a fracture brace. [DN 7] at 790. On May 6, 2021, an x-ray still showed a visible wrist fracture "with a displaced fragment." [DN 7] at

799. At three months post fall, Plaintiff had left wrist swelling and was restricted to ten-pound lifting limit with the left arm. [DN 7] at 803.

A few weeks following his work injury, Plaintiff was seen on March 26, 2021, at MCH Orthopedic & Sports Medicine for severe right shoulder pain. [DN 7] at 793. Treatment records suggest that his pain was compounded by his need to use the right hand only due to his left wrist fracture. Following a failed course of physical therapy, Plaintiff was eventually diagnosed via MRI as having a "massive" full thickness right rotator cuff tear [DN 7] at 810, which required surgery on July 20, 2021. Following shoulder surgery, Plaintiff's right arm was in a sling through September 2021, and on September 27, 2021, Plaintiff was given restrictions of no lifting with the right arm. [DN 7] at 817.

Issues continued with Plaintiff's left wrist and right shoulder. On October 11, 2021, Plaintiff was still having pain, decreased strength and difficulty with motion in his left wrist despite physical therapy. He was referred to Kleinert Kutz & Associates Hand Specialists in Louisville, Kentucky where Dr. Galvis found on November 18, 2021, dorsal angulation of the wrist, decreased motion, cubital tunnel syndrome and an ulnar nerve lesion. [DN 7] at 731-36. Dr. Galvis restricted Plaintiff to strict one-handed duty with no use of the left arm.

In December of 2021, Plaintiff had recurrent pain following his right shoulder rotator cuff surgery and was diagnosed with impingement syndrome. Following pain management and failed physical therapy, it was determined by MRI on April 8, 2022, that Plaintiff had suffered a recurrent right rotator cuff tear. By June of 2022, it was determined that Plaintiff needed repeat right shoulder surgery including placement of a balloon spacer. The second right shoulder surgery was performed in July of 2022, and by September of 2022, Plaintiff was doing well "80% better since the surgery" and was restricted to ten-pound lifting/pushing/pulling with his right arm. [DN 7] at 932, 936. By

November 28, 2022, orthopedic surgeon Dr. Malempati notes Plaintiff has "full range of motion" with "good strength in the right upper extremity with mild deficiency compared to the contralateral limb." [DN 7] at 986-989.

An MRI of the left wrist on April 29, 2022 (over a year following its break), showed fracture deformities of the ulna and radius, with tendinopathy and tenosynovitis. [DN 7] at 960-61. Further consult with hand specialist Dr. Galvis showed positive findings on left wrist testing, joint swelling and changes of the triangular fibrocartilage complex (TFCC). According to the treatment records, by September 15, 2022, Dr. Galvis recommended surgery and continued Plaintiff's one-handed duty restriction pending surgical TFCC repair. [DN 7] at 905, 910.

At the hearing, Plaintiff testified that his left wrist is the most limiting problem, and that "doctor's orders says for me not to use my left hand at all." [DN 7] at 65-68. In addition to pain, he described sensation and numbness problems with the pinky and ring finger, limited range of motion in rotating/turning his wrist, a loss of grip strength caused difficulty holding on to things resulting in dropping things, and muscle cramps/spasms like charley horses in the arm and wrist. When Plaintiff testified that his doctor had told him not to lift anything with his left hand, the ALJ expressed skepticism saying that he "must have missed that" in the record and suggested that Plaintiff's testimony had been inconsistent with the record:

> All right. You said the doctors say not to lift anything with the left hand and I must have missed that but I'll go back and find that statement in your record but, you know, you are driving and some of your other record indicates that your wrist is healed. Equal grips, well aligned and all of that things and then that's what had been inconsistent but Mr. Meadors, I'll go back and make sure that I didn't misread something in all of that and just miss it all together. So, thank you for your testimony today, Mr. Meadors.

Hearing Transcript, [DN 7] at 69-70.

In closing statements at the hearing, Plaintiff's counsel referred to the medical timeline and overlap of the two upper extremity injuries and physician-imposed limitations over an almost two-year period as outlined in his brief to the ALJ. [DN 7] at 76. To rebut the ALJ's openly-stated credibility concerns regarding Plaintiff's statement that his doctor had restricted him to no use of his left hand, counsel provided the ALJ the citation to hand specialist Dr. Galvis' record limiting Plaintiff to no work with his left hand dated July 14, 2022, in Exhibit 20F, page 16:

> Dr. Galvis moved him down to no duty with the left hand. I've got the citation for that, July 14th, 2022. That's 20F page 16[2] and that I think was after he was having continued problems and is still awaiting surgery pending approval by the insurance company. He says he needs some type of procedure that has to do with the triangular fibro cartilage diagnosis and that's at Exhibit 20F page 4 where the surgery was recommended.

Hearing Transcript, [DN 7] at 77.

**Relief sought by Plaintiff**. In his Fact and Law Summary, Plaintiff makes essentially two arguments: 1) the ALJ's Fourth Step RFC assessment is erroneous because it does not reflect Plaintiff's decreased abilities resulting from his March 4, 2021, bilateral upper extremity injuries and the 14-21 month period immediately following those injuries during which he had significantly reduced functional capacity; and 2) the ALJ failed to properly consider Plaintiff's symptoms and the combined effects of Plaintiff's left wrist and right shoulder limitations in assessing his RFC. Plaintiff additionally took issue with the ALJ's Step Two finding that his wrist impairment is merely "degenerative joint disease of the left wrist status post well-healed fracture" when the record reflects a more complex problem than this characterization suggests. However, Plaintiff likely did not enumerate this Step Two issue as a distinct objection, knowing that the Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe when other impairments have been found severe in order to clear the "threshold inquiry" of Step Two.

*Anthony v. Comm'r of Soc. Sec.*, 266 F. App'x 451, 457 (6th Cir. 2008*); Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009). While the ALJ's reductive description of Plaintiff's left wrist impairment is instructive to this Court's review, it is nonetheless harmless.

Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x, 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms. In this case, as discussed more fully below, the undersigned finds problems in both categories.

1.  The ALJ's RFC findings do not reflect Plaintiff's significantly reduced functional capacity between March 4, 2021, and the approximately 14-21 months following the injury.

In his Decision dated February 14, 2023, ALJ Eastham found that Plaintiff "**has** (emphasis added to show present tense use of the verb) the residual functional capacity to perform light work" with certain exceptions. [DN 7] at 19. As the Commissioner points out, light work is defined in the regulations as follows:

> Light Work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b); 416.967(b).

The ALJ's RFC findings are based in part upon acceptance of the medical opinions and findings of Dr. Culbertson[3] and Dr. Back,[4] the state agency consulting physicians who reviewed the medical records available on January 8, 2022, and May 7, 2022, respectively. The ALJ found Plaintiff capable of light work with restrictions:

> [t]he claimant could perform light exertion level work except the claimant could only occasionally climb ladders, ropes, or scaffolds, and occasionally craw. The claimant could frequently reach overhead with the right arm and frequently handle and finger with the left hand. The claimant had to avoid concentrated exposure to vibrations and workplace hazards (Exhibits 1A, 2A, 5A, and 10A). These opinions are *generally persuasive* as they are *generally internally consistent with the evidence as discussed in the opinions themselves*, and are *generally supported* by the claimant's continued treatment and objective scans, which show significant shoulder improvements after his more recent arthroscopy (Exhibits 16F and 19F) and *wrist scans* (Exhibit 17F). (Emphasis added.)[5]

ALJ's Decision, [DN 7] at 23.

Plaintiff identified, and the record contains, numerous instances of his treating physicians opining greater restrictions than those found by the ALJ. Specifically, Plaintiff's treating expert physicians/surgeons – orthopedic surgeon Dr. Chaitanya Malempati and hand surgeon/Assistant Clinical Professor of Surgery at University of Louisville School of Medicine Dr. Elkin Galvis – provided clear and often overlapping restrictions (supported by objective medical evidence contained in their records) on Plaintiff's physical abilities to use his upper extremities that are not

---

[3] State Agency Consulting Physician Dr. Robert Culbertson is an internal medicine physician who rendered his opinion on January 8, 2022 that Plaintiff had unlimited abilities to push and/pull with his upper extremities, except that he should only lift/carry 20 pounds occasionally and 10 pounds frequently, that he had unlimited ability reach front or laterally with both extremities, limited overhead reaching with his right extremity, and that he could frequently handle and finger with his left hand. [DN 7] at 81-83. Notably, Dr. Culbertson did not have the benefit of reviewing any of Dr. Galvis' records regarding the condition of Plaintiff's left arm/wrist/hand.

[4] State Agency Consulting Physician Dr. Douglas Back is an ophthalmologist who concurred with and upheld Dr. Culbertson's initial findings on May 7, 2022, with the benefit of reviewing only one of Dr. Galvis' medical records pertaining to Plaintiff's ongoing wrist issues. [DN 7] at 123.

[5] Notably, the "wrist scans" referenced at Exhibit 17F is a singular April 29, 2022, MRI of the left wrist (about fourteen months following the wrist break), DN 7 at 960-961. Presumably, the ALJ intended for the MRI which simply showed "no acute fracture" to be the "significant" improvement that makes the state agency physicians' opinions "generally persuasive" and "generally internally consistent with the evidence as discussed in the opinions themselves" and "generally supported" by said "significant" improvement. [DN 7] at 23.

10

contemplated by the ALJ's RFC findings. In his Decision, the ALJ summarized Plaintiff's medical treatment but discounted each of the restrictions imposed by his treating surgeons as "unpersuasive" because they were short-term limitations not intended to be permanent limitations. In fact, the ALJ uses that reasoning at least seven times in the Decision in order to disregard Dr. Malempati's limitations on Plaintiff's use of his right upper extremity[6] and Dr. Galvis' limitations on Plaintiff's use of his left upper extremity.[7] While the undersigned agrees that the restrictions imposed by Plaintiff's treating physicians may not have been intended as permanent limitations, there remains the fact that temporary, overlapping limitations of both the right and left upper extremities add up to a period of time during which the Plaintiff could not perform the range of light work contemplated by the ALJ's RFC findings.

Testimony offered by the vocational expert during the administrative hearing would support Plaintiff's claim of a period of disability during which he could not perform the range of light work contemplated by the ALJ's RFC. Specifically, when asked during the hearing whether there would be work available in the national economy to accommodate the ALJ's RFC findings but with limitations of only occasionally reaching, handling, fingering and feeling and never overhead reaching, the vocational expert answered that there would be no jobs available:

> Q by ALJ:    Right, okay. One final question. If the individual could only occasionally reach, handle, finger and feel and never overhead reaching, how would that impact employability period at light or sedentary?

> A by VE:    For those researchers [sic] especially occasional reaching and handling, Your Honor, I would have no work. There's an all maximum that if you reduce reaching and handling to occasionally, you reduce or erode the occupational base in the DOT between 95 and 99%. So, I'd have no work at any physical level.

Administrative Hearing, [DN 7] at 74-75.

---

[6] Orthopedic Surgeon Dr. Malempati operated twice on Plaintiff's right upper extremity repairing full thickness rotator cuff tears on July 20, 2021, and in July 2022. The surgical record of the second rotator cuff repair is notably absent from the administrative record.
[7] Hand Surgeon Dr. Galvis saw Plaintiff on 11/18/21, 6/2/22, 7/14/22, and 9/15/22.

The ALJ's RFC findings in this case are based in part upon the state agency non-examining, record reviewing physicians, Drs. Culbertson and Back. Dr. Culbertson's opinion was rendered on January 8, 2022, without the benefit of any of Dr. Galvis' medical records pertaining to Plaintiff's left wrist,[8] and Dr. Back's opinion was rendered on May 7, 2022, with the benefit of only the first Dr. Galvis medical record from November 18, 2021. Nonetheless, Dr. Galvis' visit notes from the November 18, 2021, appointment indicate that Plaintiff is limited to strictly one-handed work with no use of the left arm. [DN 7] at 735. Additionally, neither of the state agency reviewing physicians were aware of Plaintiff's second rotator cuff surgery in July of 2022, and the medical records from that second shoulder surgery are nowhere to be found in the administrative record. And while the Commissioner's Fact & Law Summary accurately indicates that the ALJ gave Plaintiff some "benefit of the doubt" in assigning greater limitations that those of the state agency consultants, the fact remains that the information upon which the state agency consultants based their opinions was quite limited.

Certainly, there is no requirement that the state agency reviewing physicians cite to or have access to every medical record before them when formulating their opinions. The Sixth Circuit has explained that ALJs "may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is some indication that the ALJ at least considered these facts." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x, 491, 493 (6th Cir. 2016) (internal quotations omitted). However, in this instance, where there are important medical records missing from the administrative record, where it is unclear whether the ALJ considered the overlapping temporary restrictions on Plaintiff's use of both his upper right and left extremities, and the ALJ's finding of left wrist improvement is based upon one "wrist scan" that

---

[8] The Administrative Record indicates that the first treatment record from Dr. Galvis was received on February 23, 2022. [DN 7] at 737.

shows bones are no longer broken, the scales tip in favor of the Plaintiff. While the threshold for evidentiary sufficiency is "not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) it is not met here. In this case, a general reference to "wrist scans" which show "no acute fracture" some fourteen months following the broken wrist[9] falls into the "mere scintilla" category of insufficient evidence to support the ALJ's findings.

2.    The ALJ improperly evaluated the limiting and combined effects of Plaintiff's symptoms.

An ALJ's evaluation of a claimant's symptoms is governed by Social Security Ruling 16-3p and 20 C.F.R. §§ 404.1529, 416.929, which mandate a two-step process for evaluating an individual's symptoms. At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3 at *3. The ALJ must base this determination upon objective medical evidence. *Id*. At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3 at *9. As part of this analysis, the ALJ must decide whether an individual's symptoms and accompanying limitations are consistent with the evidence of record. *Id*. at *8. The Social Security Administration recognizes that individuals experience symptoms differently, and that the ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." In making findings regarding symptoms, the ALJ will consider whether an individual's

---

[9] In addition to showing "improvement" of no acute fracture, the April 29, 2022, MRI of Plaintiff's left wrist indicates continued problems of positive ulnar variance, joint effusion, tendinopathy and tenosynovitis of the extensor carpi ulnaris tendon. [DN 7] at 960-61.

statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at \*8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1)     Daily activities;

2)     The location, duration, frequency, and intensity of pain or other symptoms;

3)     Factors that precipitate and aggravate the symptoms;

4)     The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5)     Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6)     Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7)     Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at \*7-8.

The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at \*10.

With regard to Plaintiff's left wrist limitations, the ALJ cites "wrist scans (Exhibit 17F)" [DN 7] at 20 and 23 as both support for "improvement" and as not supporting the severity of symptoms Plaintiff alleged at the hearing. Exhibit 17F is an MRI taken almost fourteen months

after the March 4, 2021, wrist fracture that includes findings of "no acute fracture, dislocation, occult bony confusion [*sic*.] or avascular necrosis" and "old healed fracture deformities of the ulnar styloid process and distal left radius." To the extent the MRI shows no acute fracture fourteen months following his broken wrist, the undersigned would agree that by most any standard, that constitutes "improvement." However, there are numerous other findings from the April 29, 2022, MRI which support Plaintiff's continued wrist problems: positive ulnar variance, small distal radioulnar joint effusion, nonspecific edema of the median nerve, tendinopathy and tenosynovitis involving the extensor carpi ulnaris tendon, and mild hypertrophic degenerative change of the first metacarpal phalangeal joint with small joint effusion of the first carpal metacarpal joint space. This is in addition to overwhelming objective medical evidence in the record of Plaintiff's ongoing problems with his left wrist including positive signs on examination by Dr. Galvis with ulnar nerve lesion and positive for cubital tunnel syndrome,[10] changes at the foveal insertion of the TFCC and distal radioulnar joint effusion,[11] radio/ulnar deviation and DeQuervain syndrome,[12] positive findings on electromyogram,[13] and recommended surgery.[14]

Contrary to the ALJ's recollection at the Administrative Hearing,[15] occupational therapy notes from June 15, 2022, showed *unequal* grip strength, numerous positive findings on sensation testing, problems with joint integrity/mobility/pain and range of motion, soft tissue mobility,

---

[10] **November 18, 2021** -- Dr. Galvis multiple points of tenderness in wrist, tendons and ulnar nerve, positive cubital tunnel syndrome. Medications included doxycycline, ibuprofen, meloxicam, promethazine and oxycodone 5mg/every 12 hours for pain. Limited to no use of the left arm. [DN 7] at 732, 735.

[11] **June 2, 2022** -- Dr. Galvis notes tenderness and changes at the foveal insertion of TFCC, and distal radioulnar joint effusion. Limited to light work. Steroid injection for pain. [DN 7] at 925, 929.

[12] **July 14, 2022** – Dr. Galvis notes additional finding of DeQuervain's (tenosynovitis) again injects steroids for pain, and limits Plaintiff to one-handed work. [DN 7] at 919, 920.

[13] **August 31, 2022** – Dr. Wesley Chou notes issues with left carpal tunnel, right median motor nerve and right ulnar sensory nerve possible concussion neuropathy or multifocal motor neuropathy. [DN 7] at 915.

[14] **September 15, 2022** – Dr. Galvis recommends surgery to repair TFCC, endocubital and 1st extensor compartment release. Limits Plaintiff to one-handed work with no use of the left arm. [DN 7] at 907, 910.

[15] ALJ Hearing quote questioning equal grip strength.

swelling, and weakness. The records note the referral was for "Double Crush injury of ulnar nerve" and that his symptoms were "consistent with referring diagnosis."[16]

In making his RFC findings, the ALJ discounted Plaintiff's symptoms and their limiting effects when evaluating them pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. The ALJ noted in his Decision that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" [DN 7] at 19, yet he characterized Plaintiff's symptoms as only wrist and shoulder "pain" before discounting Plaintiff's credibility[17] – i.e. consistency and supportability – as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence, including reports to treatment providers such as having 70-80% improvement in his shoulder (Exhibits 16F and 19F) and wrist scans (Exhibit 17F), do not support the severity alleged at the hearing.

ALJ's Decision, [DN7] at 20.

Review of the record and of Plaintiff's hearing testimony reveals continuing problems with his left wrist in addition to the pain noted by the ALJ – he testified to weakness in his grip, decreased range of motion in his wrist, joint swelling/soreness, and sensory problems. Those complaints are consistent with Plaintiff's evaluations by hand specialist Dr. Galvis who made objective findings of dorsal angulation, cubital tunnel syndrome and ulnar nerve lesion in addition

---

[16] **September 19, 2022** – Graves Gilbert Clinic occupational therapy notes. [DN 7] at 965-967.
[17] As the Commissioner notes, Social Security Ruling (SSR) 16-3p eliminated the use of the term "credibility." 2017 WL 5180304 (S.S.A. Oct. 25, 2017). However, the underlying regulations governing symptom analysis have not changed, and cases interpreting those regulations remain relevant.

to recommending surgery to correct the triangular fibrocartilage complex (TFCC, the structure that supports the carpal bones at the wrist). EMG results confirmed ulnar nerve issues, and an MRI of the wrist showed degenerative findings and deformities of the ulna and radius, in addition to tendinopathy and tenosynovitis. The ALJ's Decision does not mention that Plaintiff was taking Oxycodone and numerous other medications to cope with his upper extremity conditions; that his left wrist condition had not been responsive to physical and occupational therapy; and that Plaintiff suffered from limiting symptoms other than the "pain" noted in the Decision.

Finally, it is unclear whether the ALJ considered the combined effects of Plaintiff's upper right and left extremity limitations as required by 20 C.F.R. §§ 404.1523(c) and 416.923(c). The ALJ's Decision devotes almost six pages to summarizing Plaintiff's medical records, and notes that he "considered all symptoms" when formulating his RFC and discounting Plaintiff's symptoms as inconsistent with the medical and other evidence of record. Laudably, the ALJ recounts Plaintiff's extensive medical treatment chronology in detail. However, there is no indication that the ALJ took into consideration the combined effects of Plaintiff's upper right and left extremity limitations together. That is, the ALJ methodically recounted the treatment chronology for each extremity, then summarily discounted any restrictions imposed by his treating surgeons as "short-term limitations afforded the claimant" while "further testing and continued improvement take place" or while "awaiting another visit with a specialist." The ALJ declined to consider the treating surgeons' limitations because they were individually "temporary" in nature, and "therefore unpersuasive." There is no indication that the ALJ considered the combined effects of each of the temporary upper extremity limitations imposed, specifically with the overlap of the treating surgeons' restrictions on no use of either the left or right upper extremities.

When charted chronologically, the overlap of Plaintiff's combined upper left and right extremity limitations in excess of the ALJ's RFC findings is clear:

| | |
|---|---|
| 03/04/21 | Broken left wrist placed in long-arm cast – no use of left arm and prescribed oxycodone with refills for pain.[18] |
| 03/26/21 | Orthopedics visit notes right shoulder pain compounded by the need to use the right hand only due to the left wrist fracture; eventual surgery for "massive" full thickness rotator cuff tear with retracted tendon.[19] |
| 04/01/21 | Physical therapy evaluation – patient in subacute intractable right shoulder pain.[20] |
| 04/08/21 | Physical therapy not relieving right shoulder pain, significant crepitus with range of motion.[21] |
| 04/12/21 | Left wrist cast removed but still has pain, swelling, weak grip and stiff elbow; fitted with Exos fracture brace.[22] |
| 05/06/21 | X-ray shows healing but still visible fracture with a displaced fragment and possible displacement of the dorsal fragment with angulation.[23] |
| 06/03/21 | Left wrist swells w/ use; restricted to ten-pound lifting/pushing/pulling with the left arm.[24] |
| 06/21/21 | PT notes difficulty with gripping items for long period of time. Assessment shows non-equal grip: L: 35, 40, 35 and R: 65, 60, 63.[25] |
| 07/03/21 | MRI of right shoulder shows full thickness rotator cuff tear with retracted tendon and moderate to marked degeneration of the acromioclavicular joint with osteophytes and impingement.[26] |
| 07/20/21 | Surgical rotator cuff tear is surgically repaired; Dr. Malempati notes "massive" two-tendon tears. Placed in right arm sling for five weeks post-surgery and non-weightbearing limitation on right upper extremity.[27] |

---

[18] DN 7 at 785.
[19] DN 7 at 793.
[20] DN 7 at 562, 564.
[21] DN 7 at 555, 556.
[22] DN 7 at 790.
[23] DN 7 at 799.
[24] DN 7 at 803.
[25] DN 7 at 524.
[26] DN 7 at 606.
[27] DN 7 at 610, 611.

| | |
|---|---|
| 08/23/21 | Right shoulder improving; remain in sling through 09/07/21. No lifting and non-weightbearing right upper extremity restrictions given by orthopedic surgeon.[28] |
| 09/27/21 | Right shoulder healing; given restrictions of no lifting with the right arm.[29] |
| 10/11/21 | Physical therapy of left wrist has failed; x-ray shows some degenerative changes. Orthopedic surgeon Dr. Malempati restricts Plaintiff from work for problems with left wrist until seen by Kleinert Kutz Hand Specialists in Louisville.[30] |
| 11/18/21 | Dr. Galvis of Kleinart Kutz Hand Center diagnoses left lesion of ulnar nerve, positive findings on examination of wrist and tendons, and cubital tunnel syndrome. Limits Plaintiff to strict one-handed work with no use of the left arm.[31] |
| 12/27/21 | Recurrent right shoulder pain treated with steroid injection. Diagnosed with right shoulder impingement syndrome.[32] |
| 01/10/22 | Pain management visit w/ Dr. McCarty; reports raising arm and feeling a pop on 01/01/22. To be referred back to orthopedic surgeon and told to continue activities as tolerated.[33] |
| 02/14/22 | Returned to physical therapy; indicates he has lost all improvements in shoulder with new pain, decreased range of motion and weakness of musculature.[34] |
| 04/08/22 | MRI of right shoulder shows large recurrent rotator cuff tear with migration of the humeral head and torn biceps tendon.[35] |
| 07/??/22 | Dr. Malempati performs second right rotator cuff shoulder repair with balloon spacer. |
| 09/19/22 | At follow-up visit following second right shoulder torn rotator cuff repair, orthopedic surgeon notes he's 80% better since the surgery; no lifting, pushing or pulling greater than 10 pounds. Follow up in 6 weeks for recheck.[36] |
| 11/28/22 | At four-month follow-up visit following shoulder surgery, Dr. Malempati says he is progressing well in physical therapy, with full range of motion and good strength in right upper extremity with mild deficiency compared to the contralateral limb.[37] |

---

[28] DN 7 at 815.
[29] DN 7 at 817.
[30] DN 7 at 615, 821.
[31] DN 7 at 732, 735.
[32] DN 7 at 824.
[33] DN 7 at 743.
[34] DN 7 at 782.
[35] DN 7 at 962.
[36] DN 7 at 932.
[37] DN 7 at 986-89.

The Court is cognizant of the deference accorded to an ALJ's pain/credibility assessment. *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). And certainly, where the ALJ's evaluation of the medical opinions is supported by substantial evidence, the ALJ's pain/credibility assessment is virtually unchallengeable absent compelling reasons." *Id*. However, in this case, the ALJ's Decision is silent on the reasoning pertaining to the combined effect of Plaintiff's symptoms with regard to the periods in which Plaintiff was limited in ability to use both upper extremities. The ALJ's factual recitation of Plaintiff's hearing testimony is scant and excludes all but "pain" as disabling complaints. The ALJ rejected Plaintiff's disabling testimony as inconsistent with medical reports noting 70-80% improvement in his shoulder and "wrist scans." That "wrist x-rays from April 2022 showed improvement" [DN 7] at 20, 23 is the sole record upon which the ALJ's dismissal of hand surgeon Dr. Galvis' limitations is hung is a problem. There is simply not enough analysis for this Court to meaningfully review whether the ALJ properly considered the combined effects of Plaintiff's bilateral upper extremity limitations. "Only by showing its work can the courts and claimants alike evaluate whether the ALJ applied standards appropriately and evaluated evidence adequately." *Emily M. v. Comm'r of Soc. Sec.*, No. 5:21-cv-114-BJB-LLK, 2022 WL 4595065 at *3.

In order to find a closed period of disability, a Plaintiff's symptoms must be at a disabling level of severity for a "continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In analyzing a claimant's impairments, "the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination."

**Concerns regarding the medical evidence exhibits in the administrative record**. Finally, Plaintiff's counsel raised -- and this Court shares -- concerns about the administrative record in this case. Specifically, at the Administrative Hearing, Plaintiff's counsel referenced two separate medical records from Dr. Galvis at Exhibit 20F, pages 16 and 4, pertaining to Dr. Galvis' restrictions and recommendation for surgery regarding Plaintiff's left wrist. Notably, the undersigned is unable to locate any medical records labeled Exhibit 20F, and the ALJ claimed to have "missed" any such notations of limitations from Dr. Galvis.[38] [DN 7] at 69-70. The medical exhibits enumerated with the ALJ's Decision are numbered through 19F and do not include surgical records of Plaintiff's second shoulder surgery in July of 2022. Plaintiff's counsel submitted a pre-hearing brief to the ALJ the day before the administrative hearing, citing treatment record medical exhibits numbered through at least 22F [DN 7] at 397-399, and raised concerns regarding possible missing medical exhibits at the Appeals Council level. [DN 7] at 233. While it appears that some of the latter medical exhibits referenced by Plaintiff's counsel may have been reorganized and integrated into earlier numerical medical exhibits, it is impossible for the undersigned to discern which medical exhibits were in the record at the time of the state agency medical consultants' and ALJ's records reviews, and whether there are medical records missing as a result of a later reorganization/renumbering.

In reporting on the Social Security Disability Amendments of 1980 to the Social Security Act, the joint conference committee of Congress indicated that in some cases, procedural issues necessitate remand:

---

[38]Review of the ALJ's Decision indicates that he did in fact have access to Plaintiff's treatment records from Dr. Galvis, including Dr. Galvis' restrictions on Plaintiff's use of his left upper extremity. Notably, they are contained in medical exhibits 7F and 15F in the administrative record before this court. However, the ALJ appears to have discovered the same missing surgical records from Plaintiff's second shoulder surgery by Dr. Malempati, as the ALJ estimates the second shoulder surgery as sometime "around July 20, 2022." [DN7] at 22, paragraph 4.

> The conferees have been informed that there are sometimes procedural difficulties which prevent the [Commissioner] from providing the court with a transcript of administrative proceedings. Such a situation is an example of what could be considered "good cause" for remand. Where, for example, the tape recording of the claimant's oral hearing is lost or inaudible, or cannot otherwise be transcribed, or where the claimant's files cannot be located or are incomplete, good cause would exist to remand the claim to the [Commissioner] for appropriate action to produce a record which the courts may review under 205(g) of the Act. It is the hope of the conferees that remands on the basis of these breakdowns in the administrative process should be kept to a minimum so that persons appealing their decision are not unduly burdened by the resulting delay. H.R.Conf.Rep. No 944, 96th Cong., 2d Sess. 59 (1980), reprinted in 1980 U.S.C.C.A.N 1277, 1392, 1407.

*Cofer v. Astrue*, 1:08-cv-991GSA, 2009 WL 580340, at *1 (E.D. Ca. Mar. 5, 2009).

Numerous courts have held that an unavailable or inaudible hearing tape constitutes good cause for remand to the Commissioner for further action. *See Cofer*, 2009 WL 580340, at *2; *see also Gibson v. Astrue*, 1:08cv241, 2009 WL 1376623, at *1-2 (N.D. Miss. May 15, 2009); *Wilkerson v. Astrue*, 4:08cv4023, 2008 WL 2113348 (W.D. Ark. May 16, 2008). In this case, there are other bases that support remand to the Commissioner for further consideration. However, upon remand for consideration of a closed period of disability in this case, the Commissioner should also review the medical exhibits contained within the Administrative Record to ensure that all treatment records are accounted for following their renumbering/reorganization.

<u>ORDER</u>

For the foregoing reasons, Sentence Four remand is appropriate in this case. Upon remand, the Commissioner should evaluate the medical and opinion evidence for a closed period of disability from March 4, 2021, through November 28, 2022, or any closing date the ALJ deems appropriate. In addition, the Court requests that the administrative record in this case be reviewed to ensure that all of Plaintiff's treatment records are accounted for following what may have been a renumbering/reorganization of the medical exhibits.

March 12, 2025

22

**Lanny King, Magistrate Judge**
**United States District Court**